**DMI, INC., Plaintiff,**

v.

**DEERE & COMPANY, Defendant.**

**Nos. 83–4036, 83–4083.**

United States District Court,
C.D. Illinois.

June 28, 1984.

David A. Hacker and Stephen J. Holtman, Cedar Rapids, Iowa, James J. Hill, Chicago, Ill., for plaintiff.

Donald G. Ribble, Cedar Rapids, Iowa, Virgil Bozeman and John V. Patton, Moline, Ill., Robert H. Fraser, Los Angeles, Cal., Raymond L. Hollister and H.V. Harsha, Deere & Company, Moline, Ill., for defendant.

## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge.

DMI, Inc. is the assignee of U.S. Patent No. 3,817,333 based upon claim of invention of an adjustable-width moldboard plow. The essence of the inventive claims comprises a plurality of moldboard plow units which are pivotally mounted on a main plow beam and which may be adjusted in the width of the furrow cut while the plow is in operation without halting the motive unit, i.e., a tractor. The rear plow unit is mounted to a tail section which is pivotally mounted to the main beam and which includes a wheel for supporting the distal end of the main beam. The tail wheel system is designed to reposition the rear wheel to compensate for width adjustment of the plow units and align itself in the furrow behind the rear plow unit.

DMI filed this suit for infringement, alleging that its –333 patent is infringed by Deere's Model 2800 adjustable plow.

Deere filed a motion for a summary judgment of non-infringement based upon its position that no factual questions remain for decision and that its 2800 plow does not infringe either independent claim 1 or independent claim 8 of the –333 patent as a matter of law. It supports its motion by affidavits of its engineering personnel, by exhibit evidence, and by its reliance upon an answer by DMI to a Deere interrogatory that DMI is not relying on the equitable doctrine of equivalents to prove infringement. Included in such exhibits is a copy of Deere's U.S. Patent No. 4,098,346 which embodies the structure of the 2800 plow. The application which ripened into the –346 patent was co-pending before the

Patent Examiner with the application which ripened into the –333 patent.

DMI filed a cross motion for summary judgment based upon its position that the 2800 plow literally infringes independent claim 1 of its –333 patent.[1] DMI cannot, and does not, dispute the fact that there is a significant disparity between the 2800 plow structure and the structure described in its patent, as exemplified by the drawings and specifications. However, it contends that claim 1 includes a means for performing a specified function, without recital of structure, which should be construed to cover not only the corresponding structure described in the specifications but also "equivalents thereof." 35 U.S.C. § 112. It thus argues that literal infringement is shown because the 2800 plow structure is equivalent to the "means plus function" clause of the claim. In the same breath, it seeks to reserve its right to a trial if it be determined that the infringement issue depends on the equitable doctrine of equivalents.

■ The question of infringement turns on a comparison of the asserted claim with the product which is accused of infringing the claim. *Amstar Corporation v. Envirotech Corporation*, 730 F.2d 1476 (Fed. Cir., 1984); *Envirotech Corporation v. Al George, Inc.*, 730 F.2d 753 (Fed.Cir., 1984). The question presented by these motions is epitomized by the following language of claim 1:

As a part of a combination of elements, "a steering means connected between said vehicle (a tractor) and said steering wheel (rear wheel) and responsive to the turning of said vehicle for turning said steering wheel in a direction opposite to the turning of said tractor, said steering means including compensating means for maintaining said steering wheel parallel to said plow units under normal operation for all settings of the spacing between said plow units whereby the tail end of said plow units is caused to track the movement of said tractor during

---

1. It does not rely on independent claim 8 because, in its view, factual questions would re- main for decision if claim 8 was included in its motion.

turning and said steering wheel is steered in the direction of travel of said vehicle to cause said tail section to align with the direction of travel of said vehicle for all lateral settings of said plow units." [2]

Deere's position is that its 2800 plow does not include a steering means connected between a vehicle and a steering wheel, which steering means includes compensating means. The –333 patent describes a multiple bottom plow which has the capability to adjust the individual moldboard units for various widths of cut. In operation, the plow bottoms are rotated in unison along the main beam, while a steering mechanism interposed between the tractor and the tail unit steers the rear supporting wheel to a position of proper alignment behind the rear plow bottom. The principal feature of that steering mechanism is a parallelogram structure which is interposed, and connected, between the tractor hitch and the tail unit of the plow. As the plow bottoms are adjusted for expanded, or decreased, width of cut, that mechanical linkage steers the tail unit in such fashion that the steering wheel becomes properly

---

**2.** The independent claims of the –333 patent are here set forth in full.

"1. In a plow system adapted to be pulled behind a traction vehicle and including a plurality of plow units each provided with a ground-working implement, and a main frame including a main horizontal beam inclined relative to the direction of travel of said plow system, and connected to said tractor for rotation about a vertical axis, the combination comprising: means for mounting said plow units to said inclined beam for rotation in a continuous manner about respective vertical axes, a real tail section mounted to the distal end of said inclined mean beam for rotation about a vertical axis and including a steering wheel, a guide beam pivotally mounted to each of said plow units and to said tail section and extending generally parallel to said inclined beam, hydraulic power actuated means controllable from the operator's position while said vehicle is in motion and connected between said guide beam and said frame for rotating said plow units together about their respective axes over a continuous range, such that the cut lines of all plow units remain parallel and define a predetermined angular relationship to said main beam to thereby provide an adjustable spacing between furrows formed by said plow units when pulled by said tractor, means for attaching said main frame to a traction vehicle for rotation about a vertical axis, and steering means connected between said vehicle and said steering wheel and responsive to the turning of said vehicle for turning said steering wheel in a direction opposite to the turning of said tractor, said steering means including compensating means for maintaining said steering wheel parallel to said plow units under normal operation for all settings of the spacing between said plow units, whereby the tail end of said plow system is caused to track the movement of said tractor during turning and said steering wheel is steered in the direction of travel of said vehicle to cause said tail section to align with the direction of travel of said vehicle for all lateral settings of said plow units."

* * * * * *

"8. In a plow system adapated to be pulled behind a traction vehicle and including a plurality of plow units each provided with a ground-working implement, and a main frame including a main horizontal beam inclined relative to the direction of travel of said plow system, the combination comprising: hitch means for connecting said main beam to a traction vehicle for rotation about a vertical axis; means for mounting said plow units to said inclined beam for rotation about their respective vertical axes to adjust the lateral spacing of said units, the trailing plow unit including a rearwardly extending tail beam pivotally connected to the rear end of said inclined beam and a trailing steering wheel mounted to said tail beam to follow behind the rear ground-working implement for supporting the rear end thereof; an elongated guide beam pivotally mounted to each of said plow units and extending generally parallel to said inclined beam, power actuated means controllable from the operator's position while said vehicle is in motion for forcing said guide beam longitudinally to adjust the angular disposition of said plow units in unison; and steering means connected between said vehicle and said steering wheel and responsive to the turning of said traction vehicle for steering said trailing steering wheel to follow behind said traction vehicle during turns and including compensation means for correcting the disposition of said trailing wheel for proper alignment with said rear groundworking implement to follow therebehind for all lateral adjustments of said units; said hitch means being the only support of the forward end of said plow system, and said axes of rotation of all of said units being located relative to the vertical axis of said hitch means whereby the leading plow unit will shift a given distance sideways relative to the rear furrow wheel of said vehicle when said power actuated means is adjusted and all other plow units will move a multiple of said given distance sideways from said rear furrow wheel of said vehicle."

aligned. The part of the specification which described that mechanical structure concludes with the statement, "I refer to this parallelogram arrangement as a compensating means in the steering mechanism," a statement which was added to the specification by a supplemental amendment required by an action of the Patent Examiner.

The 2800 adjustable plow is designed to permit the adjustment of the width of cut of the several plow bottoms, a design which does include a steerable rear wheel. That wheel is steered hydraulically, by a structure embodying a master cylinder-slave cylinder arrangement. The master cylinder is situated at the tractor hitch in such fashion that it responds to any turning of the tractor or any adjustment of the plow bottoms. It is connected by a pair of hydraulic hoses to the slave cylinder which is situated between the rear wheel and a trailing rear beam of the plow structure. As the master cylinder responds to any change of direction or of the position of the plow bottoms, that response evokes a corresponding reaction in the slave cylinder which steers the rear wheel to an appropriate position of alignment. Deere contends that infringement of the –333 patent cannot be found because its 2800 plow does not employ the parallelogram or other similar mechanical structure, nor any "compensating means" in the steering mechanism. Both the –333 specification and DMI's argument before this court tend to support that distinction in structure for which Deere contends.

Although the claim does not define the "compensating means," such definition is not lacking in the patent as a whole. Thus, in his description of the parallelogram structure in the specification, the patentee defined "compensating means" in the language previously noted, "I refer to this parallelogram arrangement as a compensating means in the steering mechanism." In its argument before this court, DMI says, " * * * the compensation * * * of the rear wheel is caused by the mechanical steerage linkage in the 333 patent such that as the plow rotates to the adjusted position, the steering linkage causes the wheel to rotate on its spindle and steer correctly at the adjusted position." Yet, DMI argues that no estoppel can arise which may restrict the broad language of the claim to a limitation which is not specifically stated therein, and that it is entitled to show infringement by an equivalent structure which achieves the same result.[3] Deere responds to that argument by its assertion that DMI is claiming an impermissible extension of equivalence to include any mechanism which is capable of steering the rear wheel. That characterization of DMI's position appears to the court to be accurate.

It is recognized that a claim must be construed upon the language employed and that as a general rule a limitation cannot be read into a patent claim to avoid infringement. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 770 (Fed.Cir.1983). Yet the Court cannot ignore the fact that the specification does contain the patentee's own definition of the term "compensating means" which is recited, without definition, in the claim itself. The situation presented here is closely analogous to that in *Hale Fire Pump Co. v. Tokai, Ltd.*, 614 F.2d 1278, 67 C.C.P.A. 121, 205 USPQ 123 (CCPA 1980). *Hale* considered the question whether a claim of a "releasable means" (in a patent in which the only specification reference which corresponded to that language described the release means as a reversible jackscrew) was infringed by a structure which lacked that reversible screw. The release feature in the accused structure involved a pair of handles and a locking knob to achieve that result. The court held that the jackscrew assembly must be construed as defining, and limiting, the claim reference to a "releasing means," and that the handles-knob assem-

---

**3.** Compare claim 1 to claims 4 and 9 of the –333 patent which do embody the parallelogram link-   age as a limitation.

bly of the accused structure was not an equivalent structure. (At p. 127.) DMI cannot avoid its own patentee's definition of a "compensating means" and claim equivalence in every structure which achieves the same result by a method and structure which do not even come close to falling within that definition. A comparison of the claim, as thus interpreted, to the 2800 plow structure must lead to the conclusion that the 2800 structure does not infringe the independent claims of the –333 patent.

DMI's argument is accurately summarized as a contention that any structure which achieves the result of steering the rear wheel must be construed to embody a compensating means. It thereby attempts to extend "equivalence" to an impermissible range. Its reliance on *Deere & Company v. International Harvester Co.*, 658 F.2d 1137 (7th Cir.1981), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386, which arose in this court, is misplaced. *Harvester* held only that infringement of a valid patent claim which described a system for adjustment of multiple corn heads along a single shaft could not be avoided by a modification which simply replaced the single shaft with a segmented shaft. As the court held in *Bendix Corporation v. United States,* 199 USPQ 203, 221 (Ct.Cl. Tr.Div.1978), infringement is not avoided by merely applying the skills of a mechanic who is versed in the art to vary nonessential details of the patented structure. The principle applied in those cases is inapposite to the admitted facts of the cause now before this court. The structure of the 2800 plow is significantly different from that claimed in the –333 patent.

Within the past few days, DMI was granted leave to supplement its response to Deere's motion by the citation of West German Patent 2,743,109, which is a counterpart of Deere's –346 patent. It specifically refers to language in the English translation of that patent which states that the patented structure has the facility to "compensate" for oblique movements of the plow bottoms in the steerage of the rear wheel. Deere contends that that ref-

erence has no relevant bearing because DMI's argument assumes the accuracy, first, of the translation of the –346 patent into the German language and, second, the retranslation of the German patent from German back to English. If the retranslation be accepted as accurate, it yet has no relevant tendency to lessen the impact of the –333 patentee's definition of "compensating means" upon a comparison of the 2800 plow structure with the claims of the patent.

■ "Summary judgment is as appropriate in a patent case as in any other" case when it is shown that no genuine issue of material fact remains for decision and that the movant is entitled to judgment as a matter of law. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831 (Fed.Cir., 1984); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567 (Fed.Cir., 1984).

Here no genuine issue as to any material fact remains for decision. Deere is entitled to a summary judgment that its 2800 plow structure does not infringe either of the independent claims of the –333 patent.

IT IS ORDERED, therefore, that DMI's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Deere's motion for summary judgment is ALLOWED and judgment shall enter in favor of Deere and against DMI that the –333 patent is not infringed by the Deere 2800 plow structure, and for Deere's costs of suit.