D.M.I., INC., Appellant,

v.

DEERE & CO., Appellee.

Appeal No. 84–1475.

United States Court of Appeals,
Federal Circuit.

March 4, 1985.

James J. Hill, Chicago, Ill., argued for appellant.

Robert H. Fraser, Fraser & Bogucki, Los Angeles, Cal., argued for appellee. With him on the brief were Virgil Bozeman, John V. Patton, Bozeman, Neighbour, Patton & Noe, and H.V. Harsha and R.L. Hollister, Moline, Ill.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

MARKEY, Chief Judge.

D.M.I., Inc. (DMI) appeals from a grant of summary judgment of noninfringement by the United States District Court for the

Central District of Illinois. We reverse and remand.

### Background

DMI sued Deere & Company (Deere) for infringement of U.S. Patent 3,817,333 ('333 patent). The patent discloses and claims a plow system with means for adjusting the spacing of plow units while the plow is moving. Claims 1 and 8 are the only independent claims of the '333 patent.

Claim 1 contains this limitation:

said steering means including compensating means for maintaining said steering wheel parallel to said plow units under normal operation for all settings of the spacing between said plow units, whereby the tail end of said plow system is caused to track the movement of said tractor during turning and said steering wheel is steered in the direction of travel of said vehicle to cause said tail section to align with the direction of travel of said vehicle for all lateral settings of said plow units.

Claim 8 contains this limitation:

steering means .... including compensation means for correcting the disposition of said trailing wheel for proper alignment with said rear ground-working implement to follow therebehind for all lateral adjustments of said units.

The specification of the '333 patent contains these references to "compensating means":

I refer to this parallelogram arrangement as a compensating means in the steering mechanism.

As the tail section is moved to the desired setting, the compensation means mentioned automatically straightens out the tail wheel which thereafter follows in the furrow of the rearmost plant unit.

Deere moved for an order that its accused plow "does not infringe claims 1–9" of the '333 patent.

The district court granted Deere's motion, saying:

Although the claim does not define the "compensating means," such definition is not lacking in the patent as a whole.

Thus, in his description of the parallelogram structure in the specification, the patentee defined "compensating means" in the language previously noted, "I refer to this parallelogram arrangement as a compensating means in the steering mechanism." In its argument before this court, DMI says, " * * * the compensation * * * of the rear wheel is caused by the mechanical steerage linkage in the 333 patent such that as the plow rotates to the adjusted position, the steering linkage causes the wheel to rotate on its spindle and steer correctly at the adjusted position." Yet, DMI argues that no estoppel can arise which may restrict the broad language of the claim to a limitation which is not specifically stated therein, and that it is entitled to show infringement by an equivalent structure which achieves the same result. Deere responds to that argument by its assertion that DMI is claiming an impermissible extension of equivalence to include any mechanism which is capable of steering the rear wheel. That characterization of DMI's position appears to the court to be accurate.

It is recognized that a claim must be construed upon the language employed and that as a general rule a limitation cannot be read into a patent claim to avoid infringement. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 770 (Fed. Cir.1983). Yet the Court cannot ignore the fact that the specification does contain the patentee's own definition of the term "compensating means" which is recited, without definition, in the claim itself. The situation presented here is closely analogous to that in *Hale Fire Pump Co. v. Tokai, Ltd.* [614 F.2d 1278, 67 CCPA 121] 205 USPQ 123 (CCPA 1980). *Hale* considered the question whether a claim of a "releasable means" (in a patent in which the only specification reference which corresponded to that language described the release means as a reversible jackscrew) was infringed by a structure which lacked that reversible screw. The release feature in the accused structure involved a

pair of handles and a locking knob to achieve that result. The court held that the jackscrew assembly must be construed as defining, and limiting, the claim reference to a "releasing means," and that the handles-knob assembly of the accused structure was not an equivalent structure. (At p. 1284, 67 CCPA at p. 128, 205 USPQ at p. 127) DMI cannot avoid its own patentee's definition of a "compensation means" and claim equivalence in every structure which achieves the same result by a method and structure which do not even come close to falling within that definition. A comparison of the claim, as thus interpreted, to the 2800 plow structure must lead to the conclusion that the 2800 structure does not infringe the independent claims of the –333 patent. 586 F.Supp. 949, 952–953.

### Issue

Whether the district court erred in granting summary judgment of non-infringement.[1]

### OPINION

■ As the district court recognized, "[s]ummary judgment is as appropriate in a patent case as in any other" when it is shown that no genuine issue of material fact remains for decision and that the movant is entitled to judgment as a matter of law. *Barmag Barmer Maschinenfabrik A.G. v. Murata Mach., Ltd.,* 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir.1984); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 220 USPQ 584 (Fed.Cir. 1984). It is at least conceivable that comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement. Because infringement is itself a fact issue, however, a motion for summary judgment of infringement or noninfringement should be approached with a care proportioned to the likelihood of its being inappropriate.

In the present case, the district court erred: (1) as a matter of law in interpreting the claims; and (2) failing to note the presence of material fact issues.

### (1) Claim Interpretation

■ The district court said claim 1, "as thus interpreted," was not infringed by the accused Deere structure. As this court stated in *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir. 1983), "Claim interpretation is a legal matter subject to review free of the clearly erroneous standard applicable to fact findings."

The interpretation adopted here by the district court is in law twice flawed. It was adopted in contravention of the statute, 35 U.S.C. § 112, and it involved a reading into independent claim 1 of a limitation appearing in dependent claim 4.

Paragraph 6 of 35 U.S.C. § 112 reads:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim *shall be construed* to cover the corresponding structure, material, or acts described in the specification *and equivalents thereof.* [Emphasis added.]

■ The first flaw occurred here when the district court apparently lost sight of the *function* appearing in the involved claims. That function is clearly expressed in the language "for maintaining said steering wheel ... lateral settings of said plow units" (claim 1) and "for correcting the disposition ... for all lateral adjustments of said units" (claim 8). Its attention having been focused on a felt, but non-existent, need to find a "definition" of "compensating means" *per se* in the *claim* and on an unfounded fear that a "result" rather than a function might be covered,

---

**1.** DMI asks us to save "further expense and delay by holding that claim 1 of the patent is infringed." We decline the invitation to serve a role outside our charter, namely that of the fact finder.

the court looked to the specification. No basis was cited by the district court, and none appears in the record, for limiting the means plus function limitation of the independent claims to compensating means formed of a parallelogram. *See Schenck v. Nortron Corp.*, 713 F.2d 782, 787, 218 USPQ 698, 702 (Fed.Cir.1983).[2] To interpret "means plus function" limitations as limited to a particular means set forth in the specification would be to nullify the provision of § 112 requiring that the limitation *shall* be construed to cover the structure described in the specification *and* equivalents thereof. Patentees are required to disclose in the specification some enabling means for accomplishing the function set forth in the "means plus function" limitation. At the same time, there is and can be no requirement that applicants describe or predict every possible means of accomplishing that function. The statute, § 112-6, was written precisely to avoid a holding that a means-plus-function limitation must be read as covering only the means disclosed in the specification.

The second legal flaw in the district court's interpretation of the claim in this case stemmed from an apparent non-awareness of the presence of this limitation in dependent claim 4:

> wherein said compensation means of said steering means is characterized in that a parallelogram is formed by the axes of the pivotal connections between said tie rod and said first and second arms, the pivotal axis of said first arm relative to said plow system, and the pivotal axis of said second arm on said inclined beam.[3]

■ The district court said "as a general rule a limitation cannot be read into a claim to avoid infringement," citing *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 218 USPQ 781 (Fed.Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). Where, as here, the limitation sought to be "read into" a claim

already appears in another claim, the rule is far more than "general." It is fixed. It is long and well established. It enjoys an immutable and universally applicable status comparatively rare among rules of law. Without it, the entire statutory and regulatory structure governing the drafting, submission, examination, allowance, and enforceability of claims would crumble. This court has confirmed the continuing life of the rule. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 221 USPQ 649 (Fed. Cir.1984); *Raytheon Co. v. Roper Corp.*, *supra*; *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 219 USPQ 1137 (Fed. Cir.1983). Indeed, in *Kalman*, 713 F.2d at 770, this court quoted with approval this clear statement of the rule found in *Deere & Co. v. Int'l Harvester Co.*, 658 F.2d 1137, 1141, 211 USPQ 11, 16 (7th Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981):

> Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement.

The district court's reliance on *Hale Fire Pump Co. v. Tokai, Ltd.*, 614 F.2d 1278, 67 CCPA 121, 205 USPQ 123 (1980), was misplaced. In that case, the prosecution history established that the claim was allowed because the disclosed jackscrew embodiment of "releaseable means" had a mechanical advantage in disassembling a pump, an advantage absent in a two-part pump. Nothing of record here indicates that claims 1 and 8 were allowed because the disclosed embodiment of the claimed compensation means was a parallelogram. On the contrary, the specification was here amended solely to provide an antecedent basis for the "means for compensating" limitation in the claims.

---

**2.** Claims are always interpretable in light of the specification and prosecution history of the application that led to the patent. In the present case, however, there is simply no basis in either the specification or prosecution history for limiting the "means plus function" clause in claim 1 to the employment of a parallelogram.

**3.** DMI did not charge infringement of claims 3, 4, and 9, in which limitations to a parallelogram appear.

*(2) Fact Issues*

Whether Deere's hydraulically operated plow system includes a compensating means that is an equivalent of DMI's parallelogram and that performs the function of that means as set forth in claims 1 and 8 is a question of fact. In terms of the statute, § 112, an affirmative answer to that question would mean that Deere's hydraulic means would be an "equivalent" of DMI's parallelogram or some part thereof. If (as appears uncontested) Deere's plow system includes all the other limitations of those claims, it would also mean that they are literally infringed, for in that event the entirety of claims 1 and 8 would "read" directly on Deere's plow system.

 Thus the word "equivalent" in § 112 should not be confused, as it apparently was here, with the "doctrine of equivalents." In applying the doctrine of equivalents, the fact finder must determine the range of equivalents to which the claimed invention is entitled, in light of the prosecution history, the pioneer-non-pioneer status of the invention, and the prior art. It must then be determined whether the entirety of the accused device or process is so "substantially the same thing, used in substantially the same way, to achieve substantially the same result" as to fall within that range. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 610, 70 S.Ct. 854, 857, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). In applying the "means plus function" paragraph of § 112, however, the sole question is whether the single means in the accused device which performs the function stated in the claim is the same as or an equivalent of the corresponding structure described in the patentee's specification as performing that function.

DMI at one point indicates that it intends to rely on the doctrine of equivalents to support its assertion that claims other than claims 1 and 8 are infringed. Whether such other claims are infringed under the doctrine of equivalents is also a question of fact.[4]

DMI's reliance on the doctrine of equivalents in respect of other claims may account for the district court's concern that DMI was "claiming an impermissible extension of equivalence to include any mechanism which is capable of steering the rear wheel," and was trying to avoid "its own patentee's definition of a 'compensating means' and claim equivalence in every structure which achieves the same result." That concern, as the district court noted, was fostered by Deere's arguments. It is unfounded.

Accordingly, the entry of summary judgment is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.

---

4. Deere says DMI, in answer to an interrogatory, waived all applicability of the doctrine of equivalents, but that DMI supplemented that answer after Deere filed its motion. It is un-

clear whether DMI is asserting that claims 1 and 8 are infringed both literally and under the doctrine of equivalents.