PRETTY PUNCH SHOPPETTES, INC., a Florida Corporation, Shirley J. Rexroat, individually and Elwood D. Rexroat, individually, Plaintiffs,

v.

CREATIVE WONDERS, INC., a Florida Corporation, and Marge Hauk, individually, Defendants.

No. 87–667–Civ–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Oct. 1, 1990.

Hal K. Litchford, Stephen D. Milbrath, Litchford, Christopher & Milbrath, Orlando, Fla., for plaintiffs.

Joseph C. Mason, Jr., Herbert W. Larson, Anne S. Mason, Joseph C. Mason, Jr., P.A., Clearwater, Fla., for defendants.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Dkt. 45     Motion for summary judgment on Count I of amended complaint by defendant, filed August 8, 1988

Dkt. 47     Motion to drop parties by defendant, filed August 8, 1988

Dkt. 51     Memorandum of law in opposition to defendant's motion to drop parties by plaintiffs, filed August 23, 1988

Dkt. 55     Memorandum of law in opposition to defendant's motion for summary judgment by plaintiffs, filed August 30, 1988

Dkt. 60     Notice of filing affidavit in opposition to motion for summary judgment by plaintiffs, filed September 12, 1988

Dkt. 63 Notice of filing affidavit in opposition to defendant's motion for summary judgment by plaintiffs, filed October 5, 1988

Dkt. 67 Motion to strike memorandum and affidavits opposing summary judgment and for Rule 11 sanctions by defendant, filed November 14, 1988

Dkt. 70 Memorandum (and affidavit) in opposition to defendant's motion to strike by plaintiff Pretty Punch, filed November 21, 1988

Dkt. 125 Renewed motion to drop parties by defendants, filed February 26, 1990

Dkt. 132 Response to defendant's renewed motion to drop parties by plaintiffs, filed March 12, 1990

In Count I of their amended complaint, Plaintiffs Pretty Punch Shoppettes, Inc. (Pretty Punch), Shirley J. Rexroat, and Elwood D. Rexroat (Plaintiffs) sue for injunctive relief and for damages arising under patent laws, 35 U.S.C. §§ 271, 281, 283, 284 and 285. Specifically, Plaintiffs claim that Defendants, Creative Wonders, Inc. and Marge Hauk (Defendants) infringe Plaintiffs' Dial-a-Loop embroidery needle patent for several reasons including the following:

1. Defendants' Wonder Needle literally infringes the Plaintiff's patented needle because it incorporates each material element of the patented invention.

2. The Wonder Needle infringes under the doctrine of equivalency because the Wonder needle performs exactly the same function as Plaintiffs' needle and does the same work, in substantially the same way, utilizing components that are substantially equivalent.

Plaintiffs also claim that the alleged infringement of their patent is willful, knowing and deliberate. They further contend that Defendants misappropriated trade secrets and proprietary information regarding Plaintiffs' yarns, color schemes and embroidery patterns. In addition, Plaintiffs claim that Defendants' alleged infringement has caused Plaintiffs substantial harm and will continue to cause substantial harm unless Defendants are enjoined from further infringement.

In Count II of their amended complaint, Plaintiffs allege that the Defendants infringe Plaintiffs' copyrighted punch embroidery patterns and designs. In Count III, Plaintiffs contend that the Defendants have engaged in unfair competition against the Plaintiffs.

## FACTS

Pretty Punch is a wholesale manufacturer of "punch embroidery" supplies and is the exclusive licensee of United States Letters Patent Number 4,479, 445 ('445). Elwood and Shirley Rexroat own Pretty Punch and are the assignees of the patent. The '455 patent discloses and claims an adjustable embroidery tool or needle that Pretty Punch markets under the registered trade name "Dial-a-Loop."

Creative Wonders, Inc. sells the accused infringing device, an embroidery needle known as the "Wonder Needle." Marge Hauk, who is a former Pretty Punch dealer, is one of the owners of Creative Wonders, Inc.

The principal independent claim of the '445 patent recites the existence of an embroidering tool comprising "a pair of elongated interfitting components" that are relatively rotatable around a common axis to provide for easily adjustable movement by an artist who engages in punch embroidery. Consumers typically use such devices for performing punch embroidery, sometimes known as "Russian Punch Embroidery" which entails the punching of yarn or thread into textured fabric using the punch needle. In appearance, punch embroidery needles resemble hypodermic needles with twist tops. The twist tops control the needle height.

From the standpoint of the end user, the key feature of the patented Dial-a-Loop is the ability to adjust the needle by merely twisting the interfitting components without having to disassemble the needle mechanism. Each revolution of the components extends the needle one-eighth ($\frac{1}{8}$) of an inch. By varying the embroidery loop heights, the user can produce contoured embroidery products.

In April, 1987, a Pretty Punch dealer learned that Creative Wonders was selling a punch needle, called the Wonder Needle, that resembled the Dial–a–Loop needle. The Wonder Needle could also be adjusted by manipulating interfitting components. The Pretty Punch dealer purchased a Wonder Needle and later questioned Defendant Hauk about the needle's similarity to the Dial-a-Loop. Ms. Hauk stated that the Wonder Needle was different from the Dial–a–Loop because it had four parts instead of two and because the Wonder Needle was made of nylon instead of plastic. Hauk also claimed that her needle differed from Pretty Punch's because the needle portion of the device was hand drilled, as opposed to being a "surgical" or cannulation type of assembly.

Richard Hord, a mechanical engineer and the owner of the company that designed the mold utilized in the manufacture of the Dial–a–Loop needle, examined the Creative Wonders needle. Hord opined that the Wonder Needle performs substantially the same function in substantially the same way to obtain the identical result of the patented needle. Plaintiff Shirley Rexroat also examined the Wonder Needle and formed a similar opinion.

Pretty Punch filed a motion for Preliminary Injunction on May 13, 1987. At the hearing, Herbert L. Allen, an engineer and patent attorney testified that the accused Wonder Needle directly infringed the claim set forth in Claim 1 of the Pretty Punch patent, and that the Wonder needle also met the standards of equivalency infringement because it performed substantially the same function in substantially the same way to obtain substantially the same results. Allen's unrefuted testimony was based upon an analysis of the specifications, drawings and claims of the Pretty Punch patent, together with the "file wrapper" and a comparison of the Wonder Needle to Claim 1.

This Court denied Pretty Punch's Motion for Preliminary Injunction. On appeal to the Federal Circuit Court of Appeals, the Court's denial of injunctive relief was vacated. In reversing and remanding the decision, the Federal Circuit observed:

> Pretty Punch's expert testified in detail why Hauk's needle infringed the claims of the '445 patent; both sides briefed the infringement issue, yet the trial court provided this Court with no guidance as to why and how it arrived at its conclusion. We have no basis for evaluating what facts entered into the trial court's infringement analysis or if that analysis comports with the standards articulated by this Court. (Slip Opinion at page 5).

Defendants subsequently filed their motion for summary judgment based on the expert testimony of Edward J. Brenner. Defendants contend that claim 1 of Plaintiffs' patent does not read on the Wonder Needle, and therefore, the Wonder Needle does not literally infringe the Plaintiffs' patent. Defendants also allege that the Wonder Needle does not perform the embroidery function in substantially the same way as the Dial-a-Loop and therefore, there is no infringement under the doctrine of equivalents. In addition, Defendants allege that the Plaintiff is estopped to claim equivalency infringement under the doctrine of prosecution history estoppel.

## STANDARD FOR SUMMARY JUDGMENT

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

Where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment, under Rule 56, is as appropriate in patent cases as in other cases. *See SRI International v. Matshusita Electric Corp.,* 775 F.2d 1107, 1116, 227 U.S.P.Q. 577, 581–82 (Fed.Cir.1985) (en banc) (and cases cited therein).

It is at least conceivable that comparison of a *properly interpreted claim with a stipulated or uncontested description of an accused device or process* would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement.

*Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656 (Fed.Cir.1986) (citing *D.M.I. Inc. v. Deere & Co.,* 755 F.2d 1570, 1573, 225 U.S.P.Q. 236, 238 (1985)) (emphasis added). The *Moeller* court stated that on occasion, the court has upheld a grant of summary judgment in favor of accused infringers if there were no genuine issues of material fact, the trial court had properly construed the claims, and a finding of infringement *would have been impossible. See, e.g., Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 884 (Fed.Cir.1986) (emphasis added). However, "a motion for summary judgment of the infringement or noninfringement should be approached with a care

proportioned to the likelihood of its being inappropriate." *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656 (Fed.Cir.1986) (citing *D.M.I. v. Deere & Co.,* 755 F.2d 1570, 1573, 225 U.S.P.Q. 236, 238 (1985)). This Court is satisfied that factual disputes remain which preclude summary judgment as to certain issues.

## MOTION FOR SUMMARY JUDGMENT ON COUNT I FOR PATENT INFRINGEMENT

In exchange for a patent, an applicant is required to describe the invention in such full, clear, concise and exact terms as to enable any person skilled in the art to which the invention pertains to make and use it, without undue experimentation. 35 U.S.C. § 112. The inventor must also disclose the "best mode" of carrying out the invention at the time of filing the application and must particularly point out and distinctly claim what the inventor regards to be his invention. *Id.* The last requirement is important because it lets others know when they are trespassing or infringing on the inventor's property rights in the invention. Only patent claims are infringed, not the patent as a whole. Claims are the most important part of the patent application in that they define the legal monopoly conferred on the patented specification.

An issued patent is comprised of 1) a written specification which may include drawings where appropriate and 2) claims. Only the claims disclosed in a patent grant are protected by the patent. A patent holder may be able to prove claim infringement by proving literal infringement or equivalent infringement under the Doctrine of Equivalents.

*Claim Construction and Literal Infringement*

The first step in determining patent infringement is to construe the claims. *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656 (Fed.Cir.1986) (citing *Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 866, 228 U.S. P.Q. 90, 93 (Fed.Cir.1985)). Then, the properly construed claims are compared to the

alleged infringing device. Claim interpretation is a question of law for the court unless some dispute exists as to the claim language, requiring the admission of extrinsic evidence to explain the ambiguity. *Moeller*, 794 F.2d at 656 (citing *McGill, Inc. v. John Zink & Co.*, 736 F.2d 666, 671, 221 U.S.P.Q. 944, 948 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984)). If the claims are genuinely disputed, extrinsic evidence by way of expert testimony and other evidence is appropriate since "resort to certain extrinsic evidence (i.e. the specification, prosecution, and other claims) is always necessary to interpret disputed claims." *Moeller*, 794 F.2d at 656.

In the present case, Defendants filed the affidavit of Edward J. Brenner with, and in support of, their motion for summary judgment. Plaintiffs filed affidavits of Herbert Allen and John C. McNett in opposition to Defendants' motion for summary judgment. The experts disagree as to the meaning of key terms in the claims, including "protuberance" and "screw thread," among others. Both terms are discussed at length by experts on both sides. (*See* Affidavit of Edward J. Brenner· [hereinafter Brenner Affidavit], p. 6; Affidavit of Herbert Allen [hereinafter Allen Affidavit], p. 4; Affidavit of John C. McNett [hereinafter McNett Affidavit] ), pp. 3, 4.

■ In addition, the experts disagree as to whether the Wonder Needle literally infringes Plaintiff's patent claims. (*See* Brenner Affidavit, pp. 5, 27; Allen Affidavit, pp. 8, 9; McNett Affidavit, pp. 4, 5, 7). In the present case, *Moeller* clearly applies: "Although claim construction is a legal question, underlying fact disputes may arise pertaining to extrinsic evidence that might preclude summary judgment treatment of claim construction." 794 F.2d at 657. Because there are underlying factual disputes, the court denies summary judgment to Defendants on the issue of literal infringement.

*Equivalency Infringement and Prosecution History Estoppel*

■ Even if there is no literal infringement, infringement can occur under the doctrine of equivalency if the alleged infringer's device performs substantially the same function in substantially the same manner to obtain the same results. The equivalents test was promulgated in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ If the doctrine of equivalents applies, then the Court must consider file wrapper estoppel. The file wrapper consists of the documents that were executed to prosecute the patent application (the prosecution history). If the plaintiff amended the patent claims during the prosecution of the patent and the alleged infringement does not fall within the narrowed or redefined scope of the claim, then the plaintiff is estopped from recapturing claims in litigation which the plaintiff surrendered by amendment. *See Caterpillar Tractor Co. v. Berco S.P.A.*, 714 F.2d 1110 (Fed.Cir.1983).

The Federal Circuit, in *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1363, 219 U.S.P.Q. 473, 481 (Fed.Cir.1983), stated that claim amendment does not preclude equivalency infringement:

Some courts have expressed the view that virtually any amendment of the claims creates a "file wrapper estoppel" effective to bar all resort to the doctrine of equivalents, and to confine patentee "strictly to the letter of the limited claims granted." [regional circuit court cases omitted]. We, as has the Supreme Court, reject that view as a wooden application of estoppel, negating entirely the doctrine of equivalents and limiting determination of the infringement issue to consideration of literal infringement alone....

Amendment of claims is a common practice in prosecution of patent applications. No reason or warrant exists for limiting application of the doctrine of equivalents to those comparatively few claims allowed exactly as originally filed and never amended. Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. The effect may or may not be

fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to the application of the doctrine itself.

■ In the present case, Plaintiffs' experts Allen and McNett stated that, in their opinions, the Wonder needle satisfied the requisites for equivalency infringement. (Allen Affidavit, pp. 5, 12; McNett Affidavit, p. 5). Defendants' expert Brenner claims that no such infringement exists. (Brenner Affidavit, pp. 8, 9).

The experts also disagree as to the effect of amendments to the Plaintiffs' patent claims during prosecution of the patent application, and thus disagree as to whether prosecution history estoppel would properly prevent a finding of infringement under the doctrine of equivalency. (Allen Affidavit, pp. 6, 7; McNett Affidavit, pp. 5, 6; Brenner Affidavit, pp. 4, 5, 6). These disagreements create triable issues of fact for the fact finder. Consequently, the court denies summary judgment to Defendants on the issues of equivalency infringement and prosecution history estoppel.

## DEFENDANTS' MOTION TO DROP PARTIES

■ Pretty Punch Shoppettes, Inc. was the original Plaintiff in this action. Marge Hauk, doing business as Creative Wonders, was the original Defendant. The Plaintiffs added parties in their amended complaint. The amended complaint set out the Plaintiffs as Pretty Punch Shoppettes, Inc. a Florida Corporation, Shirley J. Rexroat, individually and Elwood D. Rexroat, Individually. The amended complaint set out the Defendants as Creative Wonders, Inc., a Florida Corporation and Marge Hauk, individually. Defendants oppose the addition of parties, claiming that the Plaintiffs added the parties when they amended their complaint without specifically seeking leave of court to do so.

Under Rule 15, Fed.R.Civ.P., parties may be added or dropped when an amendment is made to a complaint as a matter of course. *See McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870 (5th Cir.1976), *modified on other grounds,* 545 F.2d 919 (5th Cir.1977). Under Rule 21, Fed.R. Civ.P., "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." The text of Rule 21 does not indicate that it is the only mechanism for dropping or adding parties to a lawsuit. The *McLellan* court pointed out that Rule 15 "sets forth a particular means by which a party attempts to add or drop parties—by amendment to his pleadings—as opposed to Rule 21's more general treatment of the overall subject matter of dropping and adding parties." Both Rules 15 and 21 are to be interpreted liberally under the Federal Rules of Civil Procedure.

In the present case, Defendants claim that the addition of the parties late in the proceedings was "prejudicial" or "intolerable," and that the addition "materially alters" the lawsuit. Since the parties were added while the cause was at the pleading stage, this contention is without merit. Further, the Defendants cannot be prejudiced by the addition of Plaintiffs who are the principals of and have a substantial identity of interest with their wholly-owned company.

In addition, Defendants cannot be prejudiced by the addition of corporate Defendant Creative Wonders, Inc., since Creative Wonders, Inc. received fair notice of the claims that exist against it through its officer, Defendant Marge Hauk, and the potential that such claims would exist against it. Therefore, Defendants' motion to drop parties and Defendants' renewed motion to drop parties is denied. Plaintiffs' request for attorneys fees required to respond to the renewed motion is also denied.

## DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' MEMORANDUM OPPOSING SUMMARY JUDGMENT AND FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS

■ Defendants' claim that Plaintiff's memorandum in opposition to summary judgment should be stricken and sanctions imposed because Plaintiffs' Dial-a-Loop differs from the device defined in the '445 patent. The law is clear that, under 35 U.S.C. § 271, infringement consists of making, using or selling a *patented* invention, not the commercial embodiment of the in-

vention. *See, e.g., Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 870 (Fed.Cir.1985). The alleged infringing device must be compared to the invention set forth in the patent claims, not to the commercial embodiment of the invention actually being sold by the patentee on the market. If the device under scrutiny satisfies the elements set forth in a patent claim, infringement is made out even if the patent infringer has only made one sale or use of the device. *See, e.g., Water Technologies Corp. v. Calco, Ltd.*, 658 F.Supp. 961 (N.D.Ill.1986). Nor does the modification or improvement of the accused device save the infringer from liability, as long as the elements crucial to the patent are in fact located in the infringer's device. *See, e.g., Texas Instruments, Inc. v. United States International Trade Commission*, 805 F.2d 1558 (Fed. Cir.1986).

### STANDARD FOR IMPOSING RULE 11 SANCTIONS

"The goal of Rule 11 is to reduce frivolous claims, defenses or motions and prevent costly meritless maneuvers." 90 F.R.D. 190, 193 (1983) (quote from Judge Mansfield, Chairman of the Advisory Committee on Civil Rules). Although the timing of sanctions rests in the discretion of the trial judge, "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir.1987) (citing Advisory Committee Note to Rule 11, as amended in 1983). Rule 11 requires that

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading,

> motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Rule 11 incorporates an objective standard. *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1583 (11th Cir.1986). In *Donaldson v. Clark*, 819 F.2d at 1556, the court cited the Advisory Committee Notes and pointed out that, "The standard for testing conduct under amended Rule 11 is 'reasonableness under the circumstances,' a standard 'more stringent than the original good-faith formula.' What constitutes a reasonable inquiry

> may depend on such factors as how much time for investigation was available to the signer [and] whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

*Id.*

Rule 11 neither expressly permits nor expressly forbids the imposition of a financial penalty, but it does explicitly give courts the authority to impose an "appropriate sanction."

> Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits. When imposed upon a lawyer, a financial penalty forces the lawyer rather than the client to bear the costs of violations of the rule.... We hold that monetary sanctions serve the purposes of Rule 11 and may be imposed as sanctions for Rule 11 violations in appropriate cases so long as they are imposed in accordance with due process.

*Id.* at 1557, 1558.

In the present case, Plaintiffs' memorandum in opposition to Defendants' motion

for summary judgment is well-grounded in fact and is warranted by existing law. Consequently, Defendants' motion to strike Plaintiffs memorandum in opposition to summary judgment and for Rule 11 sanctions is denied. Accordingly, it is

ORDERED that Defendants CREATIVE WONDERS, INC. and MARGE HAUK's motion for summary judgment against Plaintiffs, PRETTY PUNCH SHOPPETTES, INC. and SHIRLEY J. REXROAT and ELWOOD D. REXROAT, as to Count I of Plaintiffs' amended complaint is denied; it is further

ORDERED that Defendants' motion to drop parties, and Defendants' renewed motion to drop parties are denied, and Plaintiffs' request for attorney's fees required to respond to Defendant's renewed motion to drop parties is denied. It is further

ORDERED that Defendants' motion to strike Plaintiffs' memorandum and affidavits opposing summary judgment and for Rule 11 sanctions is denied.

DONE AND ORDERED.