106 F.3d 427
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PSC INC., Plaintiff-Appellant,
v.
ACCU-SORT SYSTEMS, INC., Defendant-Appellee.
 No. 96-1092.
 United States Court of Appeals, Federal Circuit.
 Jan. 17, 1997.
 
 Before ARCHER, Chief Judge, MICHEL, and RADER, Circuit Judges.
 ARCHER, Chief Judge.
 
 DECISION
 
 1
 PSC Inc. appeals from the October 13, 1995 judgment of the United States District Court for the Western District of New York, No. 94-CV-6459T, granting Accu-Sort Systems, Inc.'s (Accu-Sort) motion for summary judgment of non-infringement of Patent No. 4,652,750 (the '750 patent) and dismissing PSC's complaint. We affirm.
 
 DISCUSSION
 I.
 
 2
 On September 21, 1994, PSC sued Accu-Sort claiming that the manufacture, use, and sale of its Model 20 and 22 laser bar code scanners infringed the '750 patent. The '750 patent is directed to a hand-held scanning gun that reads bar code labels with scanned laser light. The '750 patent claims an arrangement of optical, electro-optical, and electronic components in a unitary structure inside the housing. The unitary structure arrangement increases the stability of the scanner components, protects them from shock and vibration, and allows for easier part replacement.
 
 
 3
 Claim 1 of the '750 patent reads as follows (with added emphasis on the disputed terms):[1]
 
 
 4
 A bar code scanner which comprises a housing having a port through which a beam of light for illuminating the bar code passes out of said housing and light reflected from said code passes into said housing,
 
 
 5
 a laser diode and optics for forming said beam from the light from said laser diode,
 
 
 6
 a photodetector for receiving said reflecting light,
 
 
 7
 means supporting said photodetector in said housing,
 
 
 8
 a printed circuit board having circuits thereon connected to said diode and said photodetector, and
 
 
 9
 means assembling said laser diode and optics in supported relationship upon said printed circuit board and together with each other as a unitary structure located in said housing.
 
 
 10
 The crux of the dispute over claim construction is whether the "optics for forming said beam" include only the collimating lenses necessary to reduce the diverging fan of laser light into a ray, or whether the term includes other optics involved in the propagation of the laser beam, including the beamsplitters which shape and direct the beam after it is created. According to the claim, the "optics for forming said beam" must be together with the laser diode as a unitary structure. PSC has argued consistently that the only optics encompassed in the patent claims are the optics that create the beam, the collimating lenses. Under PSC's construction, optics which shape or direct the beam after its creation are not "optics" within the meaning of the patent claim. Therefore, the claim requires, according to PSC, only that the collimating lenses be together with the laser diode as a unitary structure.
 
 
 11
 The district court disagreed with PSC. The district court held that the term optics as used in is defined by as the "optics for forming said beam." After consulting a dictionary, the court held that the "optics for forming" could include optics which shape and direct the beam, including the beamsplitters. More importantly, the district court found PSC's construction inconsistent with the specification, which states that the laser beam producing means and the beamsplitters are both part of the unitary structure. Thus, the court construed the claim as requiring the beamsplitters, which direct the beam and integrate the marker beam with the laser beam, to be part of the optics for forming said beam and concluded that they must be assembled together with the laser diode and the other optics as part of the unitary structure in . The district court also found that its more limited construction was also supported by the fact that the invention claimed by the '750 patent is not a pioneering invention.
 
 
 12
 According to this construction, the district court held that Accu-Sort did not infringe because its Model 20 and 22 scanners both use mirrors which direct the laser beam after it is created. The court found that the mirrors were equivalent to the beamsplitters of the '750 patent (because both components change the direction of the beam) and concluded that there was no infringement because it was undisputed that Accu-Sort's mirrors were not integrated with the rest of the optics in a unitary structure.[2]
 
 II.
 
 13
 We review the district court's grant of summary judgment under a de novo standard of review, with all justifiable factual inferences being drawn in favor of the party opposing summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Claim construction is a question of law which this court reviews de novo. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), aff'd, 116 S.Ct. 1384 (1996).
 
 
 14
 The district court correctly referred to the specification to define the means-plus-function language in claim 1. To literally infringe a means-plus-function claim, an accused device must employ a means that is identical to or the equivalent of the structures described in the specification. Valmont Indus. v. Reinke Mfg. Co., 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir.1993). The final inquiry as to whether an accused element is an "equivalent" is a question of fact. D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1575, 225 USPQ 236, 239 (Fed.Cir.1985). The specification contains language which corresponds directly to the means-plus-function limitation in and describes the means for accomplishing the function described in limitation as follows: "The laser beam producing means 20, the marker beam producing means 54 together with the beam splitters 62 and 70, are mounted to each other and to a printed circuit board 68...." We agree with the district court that this language directly tracks the disputed claim language which provides: "means assembling said laser diode and optics [for forming] in supported relationship upon said printed circuit board and together with each other as a unitary structure located in said housing." Therefore, the proper construction of the terms "optics for forming" includes the collimating lenses and the beamsplitters or their equivalents.
 
 
 15
 During oral argument, PSC argued that the district court improperly found that all optics which change the shape or direction of the laser beam must be mounted together in a unitary structure. PSC argues that this claim construction is flawed because the collection lens, as described in the preferred embodiment for the '750 patent, is not part of the unitary structure. Therefore, PSC contends that the district court erred in construing the '750 patent claim in a manner which excludes the disclosed preferred embodiment. If PSC were accurately characterizing the district court's claim construction, this would be a persuasive argument. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir.1996) (an interpretation of a patent claim which renders the disclosed preferred embodiment outside the scope of the claim is "rarely, if ever, correct and would require highly persuasive evidentiary support"); Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1581, 38 USPQ2d 1126, 1130 (Fed.Cir.1996) ("We share the district court's view that it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way.").
 
 
 16
 However, no such situation arises in this case. PSC has mischaracterized the district court's claim construction. The district court did not, nor do we, construe the patent claim as requiring all optics which direct or shape the laser beam to be part of the optics for forming. The specification defines this means-plus-function limitation as including the beamsplitters, but not the collection lens. The specification states:
 
 
 17
 The laser beam producing means 20, the marker beam producing means 54 together with the beam splitters 62 and 70, are mounted to each other and to a printed circuit board 68 which contains a tone generator 78 and other analog circuitry for operating and controlling the laser diode 42 (the power control circuitry) and energizing lamp.... The board 68 is located in the bottom of the upper housing 14 which is substantially flat as is shown in FIGS. 2 and 3.The board is located by one of the mountings which supports the collection lens 32. ... The entire unitary assembly 20 may then be inserted into the upper housing portion 14 and clipped in place.
 
 
 18
 The specification also explains that the "collection lens 32 is mounted against shoulders 36 and 38 of the housing in the beam port 28." Figure 1 of the patent also shows that the collection lens is not a part of the unitary structure. The specification and the figures support the conclusion that the optics for forming, which are ultimately a part of the unitary structure, include the collimating lenses and the beamsplitters, but do not include the collection lens. PSC would like us to construe the claims in a manner that is much broader than the specification permits. This, we cannot do.[3] Therefore, we affirm the district court's construction of the '750 patent claims.
 
 
 19
 The district court also found that the mirrors used in Accu-Sort's Model 20 and 22 devices are the equivalent of the beamsplitters described in the '750 patent. We conclude that this finding of fact is not clearly erroneous. Since it is undisputed that the mirrors of the Accu-Sort devices are not part of the unitary structure, we affirm the district court's grant of summary judgment of non-infringement.
 
 
 
 [1]
 The bracketed element numbers are not part of the claim, but were added by the district court for reference. We will continue to use them
 
 
 [2]
 Accu-Sort's mirrors, although present on the circuit board with the rest of the optics, are entirely separate from the laser diode assembly
 
 
 [3]
 To the extent that PSC argues that the "together with each other" language in does not require that the components be integrated as a unitary structure, but merely connected via the printed circuit board, we disagree. We agree with the district court's interpretation of these terms as requiring some integration of the components beyond their mere placement on the printed circuit board. The district court correctly refused to allow PSC to render this additional claim limitation meaningless. This construction is supported by the specification which states that the optics "are mounted to each other and to a printed circuit board."